IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| ROBERT WARREN DREADIN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No.  CIV-13-1066-STE |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed the administrative record (hereinafter TR. ____).  Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of a final judgment. Upon review of the pleadings, the record, and the parties' briefs, it is the opinion of this court that the Commissioner's decision must be **REVERSED AND REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g).

### I. PROCEDURAL HISTORY

Plaintiff filed applications alleging disability beginning July 1, 2010. (TR. 151-62). The applications were denied on initial consideration and on reconsideration at the administrative level. (TR. 58, 61). At Plaintiff's request, a hearing *de novo* was held on February 28, 2013.  (TR. 30-57). At the hearing, Plaintiff appeared with counsel and

testified in support of the applications. (TR. 36-52). A vocational expert (VE) also testified at the request of the administrative law judge ("ALJ"). (TR. 52-55). The ALJ issued her decision on July 8, 2013 finding that Plaintiff was not disabled from July 1, 2010 through September 3, 2011, but Plaintiff was disabled beginning September 4, 2011. (TR. 14-24). The Appeals Council denied Plaintiff's request for review, and thus, the decision of the ALJ became the final decision of the Commissioner. (TR. 1-2). This judicial appeal followed.

## II.  THE ADMINISTRATIVE DECISION

In addressing Plaintiff's disability applications, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity from his onset date. (TR. 16). At step two, the ALJ concluded that Plaintiff had the following severe impairments: arteriosclerotic heart disease, hypertension, and major depression. (TR. 16). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 17).

At step four, the ALJ concluded that Plaintiff was not able to perform any past relevant work. (TR. 21). The ALJ found that since July 1, 2010, Plaintiff had the residual functional capacity (RFC) to perform light work, including the ability to lift, carry, push or pull objects weighing up to 20 pounds frequently and 10 pounds occasionally, sit between four and six hours per day; stand up to six hours in an eight hour day; perform no climbing of ropes, ladders or scaffolds; perform no tasks requiring balancing or crouching;

only occasionally climb stairs and ramps, kneel, crawl or stoop; must have climate control; perform only simple tasks with routine supervision; have no exposure to the general public; perform no public service; interact appropriately with supervisors and co-workers for superficial work purposes and adapt to work situations. (TR. 18).

The ALJ went on to a step five analysis. The ALJ considered the testimony of the VE, used the Medical-Vocational Guidelines as a framework for decision making, and determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform prior to September 4, 2011. (TR. 22-23). Based on the ALJ's findings at steps four and five, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to benefits for the period from June 1, 2010 to September 3, 2011.[1] (TR. 23).

### III.  ISSUES PRESENTED

Plaintiff challenges the ALJ's decision claiming that the ALJ failed to properly determine Plaintiff's RFC from July 1, 2010 to September 3, 2011, and failed to properly determine Plaintiff's credibility.

### IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir.

---

[1] Plaintiff's age category changed as of September 4, 2011 and "based on the [Plaintiff's] age, education and work experience, a finding of 'disabled' is reached by direct application of Medical Vocational Rule 202.04." (TR. 23). Plaintiff does not challenge this portion of the ruling.

2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## V. ANALYSIS

Plaintiff suffered a massive heart attack on July 1, 2010 and underwent cardiac bypass surgery on July 3, 2010. (TR. 248-51). Plaintiff alleges that his disability began on July 1, 2010. (TR. 151). Plaintiff argues on appeal that the ALJ erred in her assessment of his credibility. (ECF No. 19:15-22). The standard for evaluating the effects of subjective symptoms on a claimant's ability to work is well established. The ALJ must consider (1) whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. *Luna v. Bowen*, 834 F.2d 161, 163–65 (10th Cir.1987).

When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Ruling, 96–7p, 1996 WL 374186, at *1. Some factors that may be considered in assessing the credibility of a claimant's statements about the effects of symptoms include (1) the claimant's daily activities; (2) the

location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the claimant has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); *see also Luna*, 834 F.2d at 165–66; *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other relevant factors including "frequency of medical contacts, ... subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."). The court also reviews an ALJ's credibility finding to ensure that the factual findings underlying the credibility determination are "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Application of these standards leads this court to conclude that the ALJ erred in her analysis of Plaintiff's credibility.

In reaching this conclusion, the court has considered that credibility determinations are peculiarly within the province of the finder of fact and should not be upset when they are supported by substantial evidence. *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Indeed, the ALJ has an "institutional advantage" in making credibility determinations. "Not only does an [ALJ] see far more

social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). However, these are general presumptions, and when an ALJ fails to closely and affirmatively link her credibility findings to substantial evidence in the record they do not trump the error. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995).

A "formalistic factor-by-factor recitation of the evidence" is not required, *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination. *Id.* at 1372. In this case, it is not the lack of a "factor-by factor" recitation of the evidence that necessitates remand, but an analysis so disjointed and inaccurate that makes it makes judicial review of her credibility determination practically impossible.

Here, the ALJ noted that Plaintiff completed a Function Report on July 23, 2010 in which he indicated that his daily activities were limited to taking a shower, going for short walks and taking care of his personal hygiene. (TR. 17). She then stated, "He over-exaggerated limitations with regard to medically verifiable exertional capacity." (TR. 17). Though she offered no insight as to how Plaintiff "over-exaggerated" his limitations, later in her decision, the ALJ cited to portions of Plaintiff's testimony at his administrative hearing regarding his daily activities. She noted his testimony indicated he can "carry a gallon of milk as long as he can switch hands if distance was involved."

6

(TR. 18). She also noted testimony that he can remain seated for long periods of time and that his mother provides him with financial assistance. (TR. 18-19). She then stated that Plaintiff's testimony showed that he could "perform more activities such as shopping and household chores than he had alluded to in his Function Report." (TR. 20). The problem with the ALJ's assessment in this regard is three-fold.

First, the Function Report was completed on July 23, 2010, approximately three weeks after coronary bypass surgery, and encompassing a portion of the relevant time period in this case. (TR. 190-97). Plaintiff's administrative hearing and thus his testimony was on February 28, 2013, more than thirty-one months later. (TR. 30).

Second, the ALJ stated that immediately following his bypass surgery, Plaintiff's treating physician indicated that Plaintiff could perform light work with the ability to lift and carry objects up to 20 pounds occasionally and 10 pounds frequently. (TR. 19). However, this is incorrect. Plaintiff's treating physician actually instructed him post-surgery that he could not lift anything greater than 10 pounds for six weeks. (TR. 251). Thus, post-surgery Plaintiff could not perform light work. *See* 20 C.F.R. § 404.1567(b) (describing light work as including, *inter alia*, the ability to lift up to 20 pounds occasionally). More important in the context of credibility, Plaintiff's statements in his Function Report were completely in accord with the instructions of his treating cardiologist during that time. (TR. 190-97, 251). Yet, the ALJ seemingly relied on the Function Report to discount Plaintiff's credibility regarding his subjective complaints. Moreover, Plaintiff's medical records further show that on September 8, 2010, following

his gallbladder surgery, his treating physician restricted him to lifting no more than 10 pounds for an additional two to three weeks, further illustrating the inaccuracy of the ALJ's limited analysis. (TR. 414).

Third, in discounting Plaintiff's credibility, the ALJ ignored certain portions of Plaintiff's hearing testimony. The ALJ indicated that Plaintiff testified his daily activities included shopping and household chores. (TR. 20). However, Plaintiff never testified he takes care of household chores. Instead, he testified that his mother assists him with household cleaning. (TR. 51-52). Additionally, he testified that he cannot walk more than across the room without running out of breath and having to rest. (TR. 48-49). He also testified that he suffers from fecal incontinence since his gall bladder removal. (TR. 47-48). The ALJ seemed to reference this testimony as Plaintiff needing frequent bathroom breaks but that characterization is not reflective of his testimony. (TR. 20).

Additionally, the ALJ relied on Plaintiff's receipt of unemployment compensation for the months of July, August and September 2010 to determine that he was not disabled during that time. Specifically, the ALJ stated:

> The claimant applied for and received unemployment benefits in the third and fourth quarters of 2009 and the first through third quarters of 2010. The receipt of the latter quarter occurred during the current adjudicative period July 2010. In general, applying for unemployment benefits presumes that an individual is holding themselves out as physically and mentally able and available to engage in sustained work activity. It is also understood that the benefits are granted based upon that presumption. Hence, with regard to the months of July, August and September

> 2010, the claimant's assertion of being disabled due to physical and mental impairments cannot be found to be credible.

(TR. 20-21). The ALJ's finding is legally erroneous.

While it is proper to treat the fact of applying for unemployment compensation benefits as some evidence of a claimant's ability to work, that fact, without more, does not conclusively negate a claim of disability. *See Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). See also *Kalishek v. Astrue*, No. 8:10–cv–714–T–23AEP, 2011 WL 4389643, at *5 (M.D.Fla. Aug. 23, 2011) ("Standing alone, the receipt of unemployment benefits does not disqualify a claimant from consideration for Social Security benefits" though "an ALJ may certainly consider a claimant's receipt of unemployment compensation in making a credibility determination."). Here, the ALJ specifically determined Plaintiff's receipt of unemployment compensation means his assertions of disability for that time period "cannot be found to be credible." (TR. 21). However, the ALJ appears to ignore that Plaintiff applied for and began receiving benefits during 2009, the year before his alleged disability onset, and stopped receiving them within three months of the same. (TR. 37); (*See* ECF No. 19:20-21). Also, Plaintiff's medical records, though mischaracterized by the ALJ, support Plaintiff's assertions regarding his physical limitations during those same three months. To the extent the ALJ conclusively relied upon Plaintiff's receipt of unemployment for the time period stated as a basis for denying benefits, her reliance constitutes legal error and requires a remand.

Finally, Plaintiff requests an award of benefits instead of a reversal and remand of his case. However, the court finds that an immediate award of benefits is not warranted. Additional fact-finding consistent with the above discussion should serve a useful purpose and not merely delay the receipt of benefits, which are, by no means, guaranteed in this matter. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Plaintiff's remaining assertions of error will not be addressed, however, on remand, the Commissioner must, of necessity, reconsider Plaintiff's RFC.

## CONCLUSION

The decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this opinion. Judgment will be entered accordingly.

**ENTERED** on March 10, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE